**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:

                                                    Chapter 7
TIFFANY M. GARRIGA

                                                    Case No. 24-35345 (KYP)
             Debtor.
-----------------------------------------------------------------x
TIMOTHY SLOWINSKI,

             Plaintiff,

      -against-                                     Adv. Pro. No. 24-09014 (KYP)

TIFFANY M. GARRIGA

             Defendant.
-----------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (2) GRANTING PLAINTIFF'S MOTION TO STRIKE UNAUTHORIZED SUR-REPLY FILED BY DEFENDANT

**APPEARANCES:**

TIMOTHY SLOWINSKI
*Pro Se Plaintiff*
224 State Street
Hudson, NY 12534

LAW OFFICE OF MITCHELL H. SPINAC
*Counsel to Defendant*
325 Wall Street
P.O. Box 3748
Kingston, NY 12402
By:    Mitchell H. Spinac, Esq.
             Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## **INTRODUCTION**

In November 2022, plaintiff Timothy Slowinski ("Slowinski") obtained a $177,800.00 judgment in state court against debtor-defendant Tiffany Garriga ("Garriga"). Slowinski commenced this adversary proceeding[1] against Garriga seeking a determination that the debt owed to him is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) and has now moved for summary judgment on those claims ("Motion for Summary Judgment").[2] Slowinski has also moved to strike a sur-reply brief filed by Garriga. ("Motion to Strike Sur-Reply").[3] Garriga opposes both motions.[4]

For the reasons stated, the Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART, and the Motion to Strike Sur-Reply is GRANTED.

## **JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

---

[1]    *See Adversary Complaint*, dated May 24, 2024 ("Complaint") (ECF Doc. # 1). "ECF Doc. # _" refers to documents filed on the electronic docket of this adversary proceeding. "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2]    *See Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment*, dated Mar. 5, 2025 and docketed on Apr. 24, 2025 ("Slowinski Brief") (ECF Doc. # 49-3); *see also Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion for Summary Judgment*, dated Apr. 21, 2025 ("Slowinski Reply") (ECF Doc. # 45).

[3]    *See Motion to Strike Defendant's Unauthorized Sur-Reply*, dated Apr. 24, 2025 (ECF Doc. # 48).

[4]    *See Memorandum of Law in Opposition to Summary Judgment*, dated Apr. 16, 2025 ("Garriga Brief") (ECF Doc. # 44); *see also Memorandum of Law in Opposition to Motion to Strike*, dated Apr. 25, 2025 (ECF Doc. # 50).

## BACKGROUND[5]

### A.    Events Leading to the State Court Action

Slowinski and Garriga entered into a romantic relationship in 2013.  (Slowinski Affirmation ¶ 8.)  At the time, Slowinski operated an art gallery at a property he owned in Hudson, New York ("Art Gallery") and lived in a property in Phoenicia, New York with his two children ("Phoenicia Property").  (*Id.* ¶¶ 10-11.)  Garriga lived in a public-housing apartment in Hudson, New York with her two children.  (*Id.* ¶ 9.)  In 2014, Slowinski and Garriga discussed getting married and living together in a single home with their four children.  (*Id.* ¶ 14.)  In furtherance of those plans, Slowinski sold his Phoenicia Property and deposited the sale proceeds into his bank account.  (*Id.* ¶ 15.)  Slowinski purchased an engagement ring, and, on February 7, 2015, he proposed to Garriga, and she accepted.  (*Id.* ¶ 16.)

On February 18, 2015, Slowinski purchased a property located at 224 State Street, Hudson, New York ("Hudson Property") and paid the purchase price as well as all fees and costs related to the purchase and closing.  (*Id.* ¶¶ 2, 17-18.)  Slowinski added Garriga as a co-owner on the deed, and they owned the Hudson Property as tenants in common. (*Id.* ¶ 17; *id.*, Ex. 2 (Bargain & Sale Deed showing co-ownership as tenants in common).)

---

[5]    The background is culled from the following sources: (i) *Plaintiff's Affirmation in Support of the Motion for Summary Judgment*, signed on Mar. 5, 2025 ("Slowinski Affirmation") (ECF Doc. # 49-1) and the exhibits appended thereto (ECF Doc. ## 39-2 through 39-27), (ii) *Plaintiff's Statement of Undisputed Facts in Support of the Motion for Summary Judgment*, dated Mar. 5, 2025 ("Slowinski Fact Statement") (ECF Doc. # 49-2), (iii) *Affidavit of Tiffany M. Garriga in Opposition to Motion for Summary Judgment*, signed on Apr. 16, 2025 ("Garriga Affidavit") (ECF Doc. # 44-1), and (iv) matters for which the Court may take judicial notice.

Slowinski and Garriga's relationship began to break down shortly after the engagement, and in the fall of 2015, Garriga told Slowinski that she was no longer interested in marriage.  (*Id.* ¶¶ 21-24.)

The Hudson Property was not habitable at the time of purchase and required extensive renovations.  (*Id.* ¶¶ 30-31.)  During 2015 and 2016, Slowinski hired local laborers to assist with demolition, paid contractors to perform certain of the renovations, and performed other renovations himself.  (*Id.* ¶¶ 33-34; *id.*, Ex. 9 (pictures showing renovation work).)  When the proceeds from the sale of the Phoenicia Property became depleted, Slowinski obtained a $50,000 home equity line of credit in June 2016 to continue renovation of the Hudson Property.  (*Id.* ¶ 33; *id.*, Ex. 10 (HELOC loan agreement).)

In or around August 2017, Garriga received a letter from the Hudson Housing Authority citing potential violations of federal housing regulations because she was living in public housing without having reported her co-ownership of the Hudson Property.  (*Id.* ¶ 35.)  To avoid conflict with the housing authority, Garriga insisted on moving into the Hudson Property.  (*Id.* ¶ 37.)  Slowinski resisted this plan because renovations to the Hudson Property were ongoing, and there was no certificate of occupancy for the house.  (*Id.*)[6]  In November 2017, Garriga and her daughter moved into the Hudson Property over Slowinski's objection.  (*Id.* ¶¶ 38-39.)  At the time,

---

[6]     Slowinski drafted a response letter to the housing authority asserting that the Hudson Property was not a reportable asset of Garriga because she had not contributed financially to the purchase and renovation of the house.  (Slowinski Affirmation, Ex. 11 (draft letter, dated Sept. 3, 2017, from Slowinski to Hudson Housing Authority).)  Garriga refused to send the letter and insisted on moving into the Hudson Property instead.  (*Id.* ¶¶ 36-37.)

Slowinski and his two children were temporarily living in a backroom of the Art Gallery. (*Id.* ¶ 40.)

The Hudson Property had three levels: (1) an unfinished half basement, (2) a first floor with a kitchen, living room, two bedrooms and a bathroom, and (3) a second floor with three bedrooms and a bathroom. (*Id.* ¶ 44.) When Garriga moved in, she encouraged Slowinski to complete renovation work for the first floor. (*Id.* ¶ 45.) Once completed, she occupied the first floor with her daughter. (*Id.* ¶¶ 45-46.) Garriga then engaged in behavior that severely limited Slowinski's ability to renovate or otherwise use the Hudson Property including by doing the following:

- threatening to damage or dispose of Slowinski's belongings if he stored them in, or moved them into, the Hudson Property (*id.* ¶ 55);

- interfering with Slowinski's renovation of the second floor including by locking him out of the Hudson Property (*id.* ¶¶ 48-50, 52);[7]

- preventing Slowinski from renting a part of the Hudson Property to offset expenses (*id.* ¶ 62);

- physically attacking Slowinski on three occasions as he was exiting the Hudson Property (*id.* ¶¶ 66, 70);

- creating an environment unsuitable for children by smoking marijuana indoors, sleeping partially clothed in the living room, and using obscene language in front of the children to demean and insult Slowinski (*id.* ¶¶ 42, 43, 47, 53-54); and

- allowing her dog to defecate on the unfinished sub-floor of the second floor (*id.* ¶ 51).[8]

---

[7]    During one incident, when Garriga found out that Slowinski was renovating the second floor, she rushed back to the Property, threatened Slowinski, and threw a roll of linoleum at Slowinski, which missed him but damaged the floor that Slowinski was installing. (Slowinski Affirmation ¶ 63.)

[8]    In July 2020, Garriga filed charges against Slowinski and obtained a temporary restraining order precluding Slowinski from entering the Hudson Property. (*See* Slowinski Affirmation, Ex. 24 (copy of the order of protection, dated Feb. 23, 2021).) These charges were dismissed by order dated December 10, 2021. (*Id.*, Ex. 25 (copy of the dismissal order).) According to Slowinski, the charges were dismissed after Garriga refused to testify in support of her allegations against Slowinski including twice invoking the Fifth Amendment at trial. (*Id.* ¶ 73.)

**B.    The State Court Action and Vandalism of the Hudson Property**

On October 15, 2020, Slowinski commenced an action against Garriga in the Supreme Court of the State of New York, Columbia Country, styled *Slowinski v. Garriga*, Index No. E012020016240 ("State Court Action") asserting claims for partition and sale, replevin, unjust enrichment, promissory estoppel, and for relief pursuant to N.Y. CIV. RIGHTS LAW § 80-b.[9]  (*See Decision and Order*, dated June 24, 2022 ("Partial Summary Judgment Decision")[10] at 3-4.)  Slowinski moved for partial summary judgment in the State Court Action seeking an order directing Garriga to (i) execute and deliver to Slowinski a deed of her interest in the Hudson Property, and (ii) return the engagement ring back to Slowinski.  (*Id*. at 1.)  On June 24, 2022, the State Court granted Slowinski's motion finding that

> the evidence presented by [Slowinski] demonstrates that the purchase of the engagement ring and the property occurred contemporaneously to each other, and to the parties' engagement, and that he sold his home and relocated his children so as to finance the purchase of the property and its rehabilitation.

(*Id*. at 5.)  The State Court overruled Garriga's opposition to summary judgment:

> [Garriga] has made conclusory, self-serving, claims that [Slowinski] simply purchased the property for her after discovering she was interested in buying it herself, that she was surprised by the purchase, that she

---

[9]    N.Y. Civ. Rights Law § 80-b provides as follows:

**Gifts made in contemplation of marriage.**  Nothing in this article contained shall be construed to bar a right of action for the recovery of a chattel, the return of money or securities, or the value thereof at the time of such transfer, or the rescission of a deed to real property when the sole consideration for the transfer of the chattel, money or securities or real property was a contemplated marriage which has not occurred, and the court may, if in its discretion justice so requires, (1) award the defendant a lien upon the chattel, securities or real property for monies expended in connection therewith or improvements made thereto, (2) deny judgment for the recovery of the chattel or securities or for rescission of the deed and award money damages in lieu thereof.

[10]    A copy of the Partial Summary Judgment Decision is attached to the Slowinski Affirmation as Exhibit 3.

> planned to repay him for the property, that she did not consider the gift of
> the property as one made in contemplation of marriage, and that
> [Slowinski] never represented that it was so intended. Such self-serving,
> conclusory, and frankly ridiculous claims are patently insufficient to
> overcome the overwhelming evidence presented by [Slowinski] relative to
> the consideration animating the gift.

(*Id.* at 6.) The State Court ordered Garriga to execute and deliver to Slowinski a deed of

her interest in the Hudson Property and found that Slowinski is entitled to the return of

the engagement ring. (*Id.* at 7.) Garriga had claimed that Slowinski possessed the ring;

thus, the State Court scheduled a trial to determine possession of the ring and damages.

(*Id.*)

Sometime in July or August 2022, Garriga moved out of the Hudson Property.

(Slowinski Affirmation ¶ 82.) When she moved out, Garriga took several items

belonging to Slowinski including a Samsung TV, a large box freezer, boxes of laminate

flooring, artwork, window curtains, plumbing fixtures, and a new electric range. (*Id.*

¶ 77; *see id.*, Ex. 27 (sales receipts for certain of the items taken by Garriga).) Garriga

also took the refrigerator and left the attached water line dripping on the floor, which

over a period of months saturated parts of the house and caused mold to grow. (*Id.*

¶ 78.) After removing these items, Garriga vandalized, or caused others to vandalize, the

Hudson Property (*id.* ¶¶ 83-84) including:

- spray painting offensive and vulgar slurs directed at Slowinski on walls,
  windows, and floors;

- pouring cement down bathroom drains and pipes;

- dumping dirt, animal feces, urine-soaked cardboard, garbage, raw meat, and
  other rotting food throughout the house; and

- placing raw fish in hidden locations throughout the house including inside
  multiple baseboard heating units, inside the air conditioner, inside the kitchen
  exhaust hood, and behind the basement partition walls.

Multiple pictures showing the damage to, and vandalism of, the Hudson Property are attached as Exhibit 28 to the Slowinski Affirmation.

As stated, the State Court scheduled a trial after entry of the Partial Summary Judgment Decision, and that trial was eventually scheduled for September 28, 2022. (*Id.* ¶ 86.)  On September 27, Slowinski was told by a neighbor that a foul smell had been emanating from the Hudson Property and that flies had been covering the windows from the inside.  (*Id.* ¶ 87.)  Slowinski called the police who entered the house by reaching through a broken basement door window and opening the door.  (*Id.* ¶ 88.)  After inspecting the premises, the police gave Slowinski access to the Hudson Property. (*Id.* ¶ 89.)  Slowinski spent that afternoon putting garbage, rotting food, broken glass, and other items into contractor bags, and piled the bags in front of the house for removal.  (*Id.* ¶ 90.)  While he was removing those items, Slowinski observed Garriga yelling at the two police officers in front of the property and demanding that Slowinski be arrested for going into the house.  (*Id.* ¶ 91.)  Garriga left after the police told her that she would be arrested if she did not leave.  (*Id.*)

After removing those items, Slowinski changed the lock on the front door and installed throw bolts on the other doors from inside the house.  (*Id.* ¶ 92.)  The next morning (*i.e.*, the day of trial), however, Slowinski discovered the glass on the doors of the Hudson Property had been smashed, and the trash Slowinski had removed from the house the day prior had been dragged back into the house and dumped on the floor.  (*Id.* ¶ 93.)

Slowinski states that it took him ten months of labor to repair the damage done to the Hudson Property.  (*Id.* ¶ 99.)

**C.      September 28, 2022 Trial in the State Court Action**

The trial in the State Court Action occurred on September 28, 2022.  Slowinski

and his attorney were present, and, although Garriga's attorney was present, Garriga

herself was not.[11]  The State Court found the testimony of Slowinski and the other

plaintiff-side witness to be "highly credible."  (Tr. at 3:7-4:7.)  The State Court concluded

as follows:

> [THE COURT:]  Based upon the testimony adduced by the Plaintiff, I do
> find the Plaintiff has, in fact, established each and every one of the causes
> of action, request for damages well beyond a preponderance of the
> evidence, meaning that rental will be ascribed as to Ms. Garriga,
> notwithstanding the fact that there was a romantic relationship between
> the parties.
>
> The testimony established here today . . . establishes beyond a
> preponderance of my determination, that Ms. Garriga, upon entering the
> premises, perhaps via that intimate relationship with Mr. Slowinski,
> immediately thereupon, at least since November 2017, set about a course
> of conduct that effectively precluded Mr. Slowinski from being able to
> occupy the premises with his family, his children, as was earlier
> contemplated that he testified to during the establishment of that
> romantic relationship with Ms. Garriga.
>
> She cannot escape her responsibility to pay a fair value of rental for these
> premises, in my determination, having effectively displaced Mr. Slowinski
> from being able to reside in the premises that has previously been
> determined by me, clearly owned solely by him, notwithstanding him
> placing Ms. Garriga's name on the deed . . . .
>
> I find that fair market value determination, given the range provided
> through the testimony and the exhibits into evidence, to be $3,000 per
> month.  That will be granted from November 2017 through and including
> today's date.  It can be prorated for the month of September of 2022, upon
> the submission of a final order and judgment by the Plaintiff.
>
> . . .

---

[11]      Excerpts of the September 28, 2022 trial transcript are attached to the Slowinski Affirmation as
Exhibit 5, and references to that transcript will be denoted as "Tr. _:_."

> Ms. Garriga has previously submitted an affirmation indicating the ring
> was lost, misplaced or taken by Mr. Slowinski.  That is completely non-
> credible in my determination.  Based upon the evidence before me, clearly,
> Ms. Garriga is depicted in one of her own postings of having that ring on
> her finger after the time she indicates that it was lost or misplaced or taken
> by her son, whatever her story may be at whenever given time, completely
> absent of any reasonable credibility.
>
> . . .
>
> Accordingly, she is responsible, having not produced that ring, for the
> value thereof . . . .  I set that valuation based upon the credible proof before
> me of $4,000.

(Tr. at 4:8-6:11.)

The State Court also concluded that Garriga was responsible for the vandalism of

the Hudson Property:

> [THE COURT:]  I also find that the testimony and the exhibits relative to
> the damages incurred at the premises -- and it's almost without a doubt
> given the evidence that's before me, that if not perpetrated directly by Ms.
> Garriga, I'll call vandalism to the premises, the damage to the premises
> due to the nature and content of it had to be at her direction or with her
> permission.  It's just incredible that someone else would have been there
> to damage the property in the manner in which it was damaged based
> upon the exhibits that are in evidence.

(Tr. at 6:12-21.)

Further, the State Court found Garriga to be in contempt for her willful violation

of its prior order requiring her to execute and deliver to Slowinski a deed of her interest

in the Hudson Property (Tr. at 8:6-9:4.), and the court ordered the Sheriff of Columbia

County to arrest Garriga until she purged herself of the contempt.  (*See Order of*

*Contempt and Arrest and Judgment for Rescission, to Eject and for Possession of Property*, dated Sept. 28, 2022 ("Arrest Order").)[12]

On November 25, 2022, the State Court entered a money judgment corresponding to its September 28 ruling. (*See Judgment*, dated Nov. 25, 2022 ("State Court Judgment").)[13]  Under the State Court Judgment, Garriga was ordered to pay Slowinski "damages of $3,000 per month for withholding of the [Hudson Property] including the rents or the value of the use and occupation of the [Hudson Property] by Defendant for the term of November 2017 through September 28, 2022 pro-rated." (State Court Judgment at 2.)  The damages calculation between November 2017 through August 2022 was $171,000 (*i.e.*, $3,000 times 57 months), and the pro-rated amount for 28 days in September 2022 was $2,800 (*i.e.*, $100 per diem times 28 days). (*Id.*)  In addition, Garriga was ordered to pay $4,000 representing the value of the engagement ring. (*Id.*)  Thus, the total amount owed by Garriga under the State Court Judgment was $177,800.00. (*Id.*)

On January 10, 2023, Garriga was arrested and placed in jail under the Arrest Order. (Slowinski Affirmation ¶ 97.)  After two days in jail, Garriga executed a deed transferring her interest in the Hudson Property to Slowinski. (*Id.* ¶ 98; *see id.*, Exs. 31 & 32.)[14]

Garriga failed to pay Slowinski the amount owed under the State Court Judgment, and on August 7, 2023, Slowinski obtained a judgment from the State Court

---

[12]    A copy of the Arrest Order is attached to the Slowinski Affirmation as Exhibit 4.

[13]    A copy of the State Court Judgment is attached to the Slowinski Affirmation as Exhibit 1.

[14]    Garriga defaced the transfer paperwork with offensive slurs. (Slowinski Affirmation, Ex. 32 at ECF pp. 56 and 57.)

pursuant to section 5227 of the New York Civil Practice Laws and Rules[15] requiring

Trustco Bank to pay Slowinski $3,653.38 (less a garnishment fee of $110.00) from

Garriga's bank account.  (*See Judgment Pursuant to CPLR 5227*, dated Aug. 7, 2023

("Garnishment Judgment").)[16]  Thus, the amount that remains owed under the State

Court Judgment is $174,146.62.

**D.    The Bankruptcy Case and this Adversary Proceeding**

On April 6, 2024, Garriga filed a petition for relief under Chapter 7 of the

Bankruptcy Code.  On April 16, 2024, Slowinski filed a proof of claim in the amount of

$174,146.62 ("POC") and attached the State Court Judgment and the Garnishment

Judgment in support of the POC.  (*See* Claim 1-1.)

On May 24, 2024, Slowinski filed the Complaint commencing this adversary

proceeding.  The Complaint largely tracks the background set forth *supra* and contains

two counts.  Count I seeks a finding that the entire amount that remains due under the

State Court Judgment is nondischargeable as a debt for a willful and malicious injury by

Garriga under 11 U.S.C. § 523(a)(6).  (Complaint ¶¶ 39-54.)  Count II seeks a finding

that the following two items are nondischargeable as debts for larceny under section

523(a)(4) of the Bankruptcy Code: (1) $4,000 owed under the State Court Judgment

representing the value of the engagement ring, and (2) an additional $2,500

---

[15]    N.Y. C.P.L.R. § 5227 provides in relevant part as follows:

Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor.

[16]    A copy of the Garnishment Judgment is attached to the Slowinski Affirmation as Exhibit 6.

representing the value of items Garriga allegedly took from the Hudson Property including a Samsung TV, a large box freezer, boxes of laminate flooring, plumbing fixtures, and a new electric range. (*Id*. ¶¶ 55-61.)

Slowinski now moves for summary judgment on both nondischargeability claims, and the parties have completed briefing on the Motion for Summary Judgment. (*See* Slowinski Brief, Garriga Brief, and Slowinski Reply.)

Two days after the filing of the Slowinski Reply, Garriga filed a sur-reply brief without seeking leave of Court. (*See Memorandum of Law in Reply to Plaintiff's Response to Defendant's Opposition to Summary Judgement [sic] Motion*, dated Apr. 23, 2025 (ECF Doc. # 47).) In response, Slowinski filed the Motion to Strike Sur-Reply. "It is well-settled that sur-replies are not permitted without court authorization." *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 465 (S.D.N.Y. 2023); *see also Kapiti v. Kelly*, No. 07 Civ. 3782, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) (permitting unauthorized sur-replies "has the potential for placing a court in the position of refereeing an endless volley of briefs") (citation and internal quotation marks omitted). Whether to permit a party to submit a sur-reply is left to the Court's discretion, *see Kapiti*, 2008 WL 75486, at *1 n.1, and "sur-replies are permitted when an opposing party raises arguments for the first time in a reply." *Preston Hollow Cap*., 343 F.R.D. at 466.

Here, Garriga never sought leave to file her sur-reply. Even if she had, the Slowinski Reply did not raise new arguments for her to respond to. Instead, the reply brief simply responded to points raised in the Garriga Brief. (*See* Slowinski Reply ¶¶ 2-8 (responding to Garriga's assertion that she did not vandalize the Hudson Property); *id*. ¶¶ 9-14 (responding to Garriga's assertion that her actions were motivated by

Slowinski's abusive behavior); *id.* ¶¶ 15-18 (responding to Garriga's assertion that she had a good faith belief that she had a right to occupy the Hudson Property); *id.* ¶¶ 19-24 (responding to Garriga's argument that she did not commit larceny because she was never convicted of criminal larceny).) Therefore, Slowinski's Motion to Strike Sur-Reply is granted, and Garriga's sur-reply brief is stricken.

The Court heard oral argument on May 13, 2025 and took the matter under advisement.

## **DISCUSSION**

### A.    **Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable hereto pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden of establishing that no genuine issue of material fact exists. *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012)).

Once the movant has carried its initial burden, "the nonmovant must set forth specific facts showing that there is a genuine issue for trial." *Bustamante*, 100 F.4th at 432 (citation omitted). When deciding whether a genuine dispute exists as to a material

14

fact, all ambiguities must be resolved, and all reasonable inferences must be drawn, in favor of the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651, 657 (2014). However, "[c]onclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)) (alteration omitted); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

## B.    Exceptions to Discharge

Section 523(a) of the Bankruptcy Code enumerates twenty categories of debts that are excepted from an individual debtor's bankruptcy discharge. 11 U.S.C. § 523(a)(1) – (20). The exceptions to discharge are "narrowly construed," and the creditor bears the burden of proving by a preponderance of the evidence that the debt is nondischargeable. *Cazenovia Coll. v. Renshaw* (*In re Renshaw*), 222 F.3d 82, 86 (2d Cir. 2000). The words "debt for" introduce many of the categories of nondischargeable debts, including the two subsections of 11 U.S.C. § 523(a) invoked by the Complaint here. *See* 11 U.S.C. § 523(a)(4) (excepting from discharge a "debt . . . for . . . larceny"); 11 U.S.C. § 523(a)(6) (excepting from discharge a "debt . . . for . . . willful and malicious injury . . . ."). The phrase "debt for" as used throughout section 523(a) should be interpreted to mean "'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like . . . connoting broadly any liability arising from the specified object . . . ." *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998) (citations omitted); *accord Major, Lindsey & Africa, LLC v. Mahn* (*In re Mahn*), Adv. Pro. Case No. 24-02822 (MG), 2025 WL

2381607, at *11 (Bankr. S.D.N.Y. Aug. 18, 2025) ("*Cohen* is better read as imbuing 'debt for' with a broad meaning, rather than a narrow one.").

In the sections that follow, the Court will address the two Counts in the Complaint and the subsections of 11 U.S.C. § 523(a) invoked by each Count.

### 1.    Count I: Willful and Malicious Injury

Section 523(a)(6) of the Bankruptcy Code provides that a bankruptcy discharge "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The "word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphases in original). Further, section 523(a)(6) encompasses "intentional torts" rather than "negligent or reckless torts," and intentional torts "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id*. at 61-62 (quoting RESTATEMENT (SECOND) OF TORTS § 8A, Comment *a*, p. 15 (1964)) (emphasis in original). "Thus, the debtor must engage in conduct where he actually intends to injure the party or engages in conduct where the consequences are 'substantially certain' to result therefrom." *Mahn*, 2025 WL 2381607, at *9 (quoting *Vyshedsky v. Soliman* (*In re Soliman*), 539 B.R. 692, 699 (Bankr. S.D.N.Y. 2015)).

"The injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Ball v. A.O. Smith Corp*., 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 87 (2d Cir. 1996)). "Malice may be implied by the acts and conduct of the debtor in the context of the surrounding circumstances." *Id*.

(citation, internal quotation marks, and alteration omitted). "A finding of malice does not require a specific intent to harm or injure, but rather is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Hough v. USAA Cas. Ins. Co.* (*In re Margulies*), 721 F. App'x 98, 101 (2d Cir. 2018) (summary order) (citation and internal quotation marks omitted).

Here, Garriga's conduct giving rise to the State Court Judgment resulted in a willful and malicious injury to Slowinski and the Hudson Property. Despite Slowinski having funded the entirety of the purchase and renovation of the Hudson Property (including by selling his Phoenicia Property and obtaining a $50,000 HELOC loan), Garriga effectively prevented Slowinski from exercising his rights as the owner of the property for a period of almost *five* years (*i.e.*, November 2017 through September 2022). As outlined *supra*, Garriga precluded Slowinski from moving his belongings into the Hudson Property, interfered with Slowinski's ability to renovate the property so that he and his children could move into the second floor, prevented Slowinski from renting a part of the property to offset renovation costs, physically attacked Slowinski on several occasions while he was exiting the property, and created an environment in the property that made it unsuitable for children. As a result, Slowinski and his two children were forced to reside in a backroom of the Art Gallery.

After the State Court ordered her to execute and deliver to Slowinski a deed of her interest in the Hudson Property, Garriga vandalized the Hudson Property by spray painting offensive and vulgar slurs all over the house, pouring cement down drains and pipes, dumping trash, animal feces, and rotting food throughout the house, and hiding raw fish throughout the house. After Slowinski removed the refuse from the Hudson

Property on September 27, 2022 and changed the locks, Garriga broke into the property and placed the refuse back into the house.

At the September 28, 2022 trial, the State Court found that Garriga precluded Slowinski from occupying the Hudson Property despite his ownership of the property. (Tr. at 4:19-22 ("[THE COURT:] . . . at least since November 2017, [Garriga] set about a course of conduct that effectively precluded Mr. Slowinski from being able to occupy the premises with his family . . . ."); *see also* Tr. at 5:1-7 ("[Garriga] cannot escape her responsibility to pay a fair value of rental for these premises . . . having effectively displaced Mr. Slowinski from being able to reside in the premises that . . . [was] clearly owned solely by him, notwithstanding him placing Ms. Garriga's name on the deed . . . .").) The State Court also found that Garriga, or someone at her direction, was responsible for the vandalism of the Hudson Property. (Tr. at 6:12-21.)

Based on its findings at trial, the State Court entered the State Court Judgment on November 25, 2022 and awarded Slowinski "damages of $3,000 per month for withholding of the [Hudson Property] including rents or the value of the use and occupation of the [Hudson Property] by [Garriga] for the term of November 2017 through September 28, 2022 pro-rated." (State Court Judgment at 1-2.)

Based on the totality of the circumstances, and consistent with the findings of the State Court, this Court finds that Garriga intended to prevent Slowinski from exercising his rights as the owner of the Hudson Property between November 2017 through September 28, 2022. This Court also finds that Garriga intended to damage the Hudson Property through her vandalism of the property. Last, the Court finds that Garriga acted maliciously. Her conduct in precluding Slowinski's occupancy of the Hudson Property for almost five years and in vandalizing the property cannot be justified on any level.

18

*Whitaker Sec., LLC v. Rosenfeld* (*In re Rosenfeld*), 543 B.R. 60, 76 (Bankr. S.D.N.Y. 2015) ("Typically implied malice is found where the behavior is of a type that the court cannot justify on any level.") (citation omitted).

Garriga's arguments in response are comprised of conclusory and self-serving statements, which are insufficient to defeat a summary judgment motion. *Kobrand Corp. v. Abadia Retuerta S.A.*, No. 12 Civ. 154 (KBF), 2012 WL 5851139, at *4 (S.D.N.Y. Nov. 19, 2012) ("[S]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment."). For example, she states that her actions stemmed from abuse by Slowinski. (Garriga Affidavit ¶ 5; Garriga Brief ¶ 3 ("The Defendant has asserted that her actions were influenced by the dynamics of an abusive domestic relationship, which, if true, could provide a just cause or excuse for her conduct.").) But Garriga fails to provide any evidence to corroborate this assertion, and abuse charges she brought against Slowinski in Hudson City Court were dismissed. (Slowinski Affirmation, Ex. 25 (12/10/2021 dismissal order); *see supra* note 8.) Further, Garriga denies vandalizing the Hudson Property (Garriga Affidavit ¶ 7), but the overwhelming evidence provided by Slowinski establishes that she was responsible for the vandalism. In particular, the offensive messages spray-painted and written on the walls of the Hudson Property were plainly directed at Slowinski from Garriga. (*See* Slowinski Affirmation, Ex. 28.) Finally, Garriga states that her occupancy of the Hudson Property was based on a bona fide belief that she had the right to occupy the premises. (Garriga Affidavit ¶ 6.) But this assertion does not address her preventing Slowinski from exercising his rights as an owner of the Hudson Property and then willfully disobeying the State Court's orders requiring her to deliver a deed to Slowinski.

Nonetheless, one aspect of the State Court Judgment did not arise from her conduct in precluding Slowinski from, and vandalizing, the Hudson Property. Specifically, the State Court awarded Slowinski money damages in the amount of $4,000 for the cost of the engagement ring. (State Court Judgment at 1.) That portion of the State Court Judgment is addressed in the section that follows.

### 2.    Count II: Larceny

Section 523(a)(4) of the Bankruptcy Code provides, in relevant part, that a bankruptcy discharge "does not discharge an individual debtor from any debt . . . for . . . larceny." 11 U.S.C. § 523(a)(4). "The question of what constitutes . . . larceny within the meaning of § 523(a)(4) is a question of federal law." *Mahn*, 2025 WL 2381607, at *9 (quotation omitted). "Larceny is the (1) wrongful taking of (2) property (3) of another (4) without the owner's consent (5) with intent to convert the property." *Adamo v. Scheller* (*In re Scheller*), 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001) (citations omitted).

In Count II of the Complaint, Slowinski argues that the following two debts owed by Garriga constitute debts for larceny within the meaning of 11 U.S.C. § 523(a)(4): (1) $4,000 owed under the State Court Judgment representing the value of the engagement ring (Complaint ¶¶ 59-60), and (2) $2,500 representing the value of certain personal property belonging to Slowinski that Garriga took from the Hudson Property. (*Id.* ¶¶ 57-58.)

### a.    Engagement Ring

Slowinski asserts that the $4,000 owed to him for the engagement ring is a debt for larceny. However, larceny requires that the intent to convert be present "at the time of the original taking." *Scheller*, 265 B.R. at 54; *accord* 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (16th ed. 2025). The record here fails to establish that Garriga had such

intent when she received the ring.  Rather, Slowinski gave Garriga the ring when he
proposed to her on February 7, 2015.  (Slowinski Affirmation ¶ 16.)  Because Garriga
lacked the intent to convert at the time of the original taking, the branch of Slowinski's
Motion for Summary Judgment seeking a nondischargeability finding for the value of
the engagement ring must be denied.

### b.    Personal Property

Slowinski contends that, when Garriga eventually moved out of the Hudson
Property, she stole certain personal property (collectively, the "Personal Property") with
an aggregate value of roughly $2,500 comprising "a large Samsung Television, a large
box freezer, boxes of laminate flooring, clothing items, artwork, window curtains and
rods, plumbing fixtures and a new electric range."  (Complaint ¶ 57; *see also* Slowinski
Affirmation ¶ 77; *id.*, Ex. 27 (sales receipts for certain of the items).)

One issue that neither party addressed is whether Slowinski has standing to bring
a nondischargeability claim for the value of Personal Property.  Under Rule 4007(a) of
the Federal Rules of Bankruptcy Procedure, only a "debtor or any creditor may file a
complaint to determine whether a debt is dischargeable."  A "creditor" means an "entity
that has a claim against the debtor that arose at the time of or before the order for relief
concerning the debtor."  11 U.S.C. § 101(10)(A).  A "claim," in turn, is defined as a "*right
to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated,
fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured,
or unsecured."  11 U.S.C. § 101(5)(A) (emphasis added).  A "right to payment" means "an
enforceable obligation."  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting
*Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990)).

Here, the record before the Court does not conclusively establish that Slowinski has a right to payment for the value of the Personal Property. The State Court Judgment did not include a money judgment for the value of the Personal Property, nor did Slowinski include the value of the Personal Property in his POC filed in Garriga's bankruptcy case. And while a failure to file a proof of claim does not preclude a creditor from bringing a nondischargeability action, *Stone v. Stone* (*In re Stone*), 90 B.R. 71, 73 (Bankr. S.D.N.Y.), *aff'd*, 94 B.R. 298 (S.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989); *Great Am. Ins. Co. v. Graziano* (*In re Graziano*), 35 B.R. 589, 592-93 (Bankr. E.D.N.Y. 1983), the entity must still establish that it is, in fact, a creditor holding a valid claim to have standing to bring a nondischargeability action under 11 U.S.C. § 523(a) and Federal Bankruptcy Rule 4007(a). Further, Garriga's bankruptcy schedules did not include a debt related to the Personal Property, *see Reyes v. Ranciato* (*In re Ranciato*), 638 B.R. 275, 285-86 (Bankr. D. Conn. 2022) (inclusion of a debt in a debtor's schedules "is strongly probative of the claim's validity") (citations omitted), and Slowinski did not cite any applicable law giving rise to such claim. *See Putnam Cnty. Sav. Bank v. Bagen* (*In re Bagen*), 185 B.R. 691, 695 (Bankr. S.D.N.Y. 1995) ("[O]nce an obligation is entirely unenforceable under applicable law, creditor status in bankruptcy is lost. . . . If PCSB does not have a right to payment under state law, it cannot be a creditor in bankruptcy and, thus, lacks the requisite standing [to assert a nondischargeability claim].").

Therefore, the branch of the Motion for Summary Judgment seeking a nondischargeability finding for the value of the Personal Property is denied because the Court cannot determine whether Slowinski has a claim for that amount.

**ORDER**

For the reasons set forth herein:

- Slowinski's Motion to Strike Sur-Reply is GRANTED;

- Slowinski's Motion for Summary Judgment is GRANTED IN PART as follows:

  o The portion of the State Court Judgment representing the amount that remains due on account of Garriga's use and occupation of the Hudson Property between November 1, 2017 and September 28, 2022 – $170,146.62 –[17] is nondischargeable because it is a debt for willful and malicious injury under 11 U.S.C. § 523(a)(6); and

- The remainder of the Motion for Summary Judgment is DENIED.[18]

Dated:    October 7, 2025
          Poughkeepsie, New York

            /s/ *Kyu Y. Paek*
            Honorable Kyu Y. Paek
            United States Bankruptcy Judge

---

[17]    This amount represents the total amount that remains owed by Garriga under the State Court Judgment ($174,146.62) minus the portion of the State Court Judgment attributable to damages for the value of the engagement ring ($4,000.00).

[18]    Arguments made by the parties but not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling.